# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

**In re:**

    **CCC Lot 2, LLC,**

        **Debtor.**

**Case No. 20-10422-cjf**
**Chapter 11 Proceedings**

## PLAN OF REORGANIZATION

Kerkman & Dunn
Attorneys for CCC Lot 2, LLC
839 N. Jefferson St., Suite 400
Milwaukee, Wisconsin 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: jkerkman@kerkmandunn.com

Dated: Milwaukee, Wisconsin
July 2, 2020, as modified on
July 3, 2020.

CCC Lot 2, LLC, as a chapter 11 debtor-in-possession (the "Debtor"), proposes the following Plan of Reorganization pursuant to § 1121 of the Code:

## ARTICLE I
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. The terms defined shall be equally applicable to both the singular and plural forms of each term unless the context otherwise requires. Any term used in the Plan that is not defined here, but that is defined in the Code, shall have the meaning assigned to that term in the Code. Any term used in initially capitalized form in the Plan shall have the same meaning in the disclosure statement, filed with the Plan, unless the context otherwise requires.

1.1   *Addendum* shall mean an addendum that is attached to the Plan.

1.2   *Administrative Expense* shall mean administrative expenses as defined by § 503(b) of the Code.

1.3   *Alliant* shall mean Alliant Credit Union.

1.4   *Allowed Claim* shall mean any Claim (a) with respect to which a proof of claim has been filed with the Bankruptcy Court on or before the date to be fixed as provided by the Bankruptcy Court pursuant to Rule 3003; or (b) scheduled in the list of creditors prepared and filed pursuant to Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount; and for either (a) or (b), any Claim for which no objection has been filed within the applicable limitation fixed by Rule 3007 or by a Bankruptcy Court order, or any Claim for which any such objection has been resolved by an order no longer subject to appeal or for which no appeal is pending.

1.5   *Allowed Priority Claim* shall mean an Allowed Claim for which the holder asserts, and is determined to be entitled to, priority under § 507 of the Code or under any other provision of the Code, except for an Allowed Priority Tax Claim.

1.6   *Allowed Secured Claim* shall mean an Allowed Claim secured by a valid and enforceable lien, security interest, mortgage or other recognized interest in property in which the Debtor has an interest, which is not void or voidable under any state or federal law or subject to set off under § 553 of the Code, but only to the extent of the Claim's value pursuant to § 506(a) of the Code.  The portion of an Allowed Claim that is not an Allowed Secured Claim shall be an Allowed Unsecured Claim except as otherwise provided for herein.

1.7   *Case* shall mean the chapter 11 case of the Debtor, Case No. 20-10422-cjf.

1.8   *Cash* shall mean with respect to a payment, a check drawn on the Debtor's bank account that has sufficient funds to pay the check when it is presented to the Debtor's bank.

1.9   *Claim* shall mean any right to payment, or right to an equitable remedy for breach of contract or performance if such breach gives rise to a right of payment, asserted against a Debtor that was in existence on or as of the Petition Date, whether or not the right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured.

1.10   *Class* shall mean the classes specified in Article II of the Plan.

1.11   *Code* shall mean title 11 of the United States Code as amended from time to time.

1.12   *Collateral* shall mean any property or interest in property of the Debtor or its bankruptcy estate that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

1.13   *Columbus Property* shall mean the property located at 150 Commerce Dr., Columbus, WI 53925, including fixtures, and more particularly described in Addendum 1.

1.14 *Confirmation Date* shall mean the date upon which a stay of the Confirmation Order applicable under Fed. R. Bankr. P. 3020(e) or an order of the Court is no longer in effect.

1.15 *Confirmation Order* shall mean the order entered by the Court confirming the Plan under § 1129 of the Code.

1.16 *Court* shall mean the United States Bankruptcy Court for the Western District of Wisconsin and any Federal court with concurrent or appellate jurisdiction.

1.17 *Court-Approved Discount Rate* shall mean the rate of interest determine by the Court that must be applied to payments specified to a Class of Creditors so that the deferred Cash payments to the Creditors in the Class have a value as of the Effective Date equal to the Creditors' Allowed Claim in order to comply with § 1129(a)(7)(B), (b)(2)(A)(i)(II) and (B)(i) of the Code.

1.18 *Creditor* shall mean any Person that has a Claim against the Debtor that arose or is deemed to have arisen on or before the Petition Date, including a Claim against the Debtor's estate under §§ 502(g) or 502(i) of the Code.

1.19 *Debtor* shall mean CCC Lot 2, LLC.

1.20 *Disclosure Statement* shall mean the disclosure statement filed by the Debtor pursuant to § 1125 of the Code after it has been approved by an order entered by the Court.

1.21 *Disputed Claim* shall mean a Claim against the Debtor the allowance of which, in whole or in part, is the subject of a timely objection; provided, however, that for purposes of determining the aggregate amount of Disputed Claims against the Debtor's estate, Disputed Claim shall mean the lesser of (a) the total amount of Disputed Claims as filed with the Court or (b) the total amount of Disputed Claims as estimated by the Court pursuant to § 502(c) of the Code; and, provided, further, that in the event the Court estimated a Disputed Claim for purposes of allowance under § 502(c), that estimation shall constitute the Allowed Claim for the purpose estimated.

1.22 *Effective Date* shall mean the date when all the conditions set forth in Article X of the Plan have been satisfied or waived.

1.23 *Final Order* shall mean an order entered by the Court as to which the time to appeal or to seek review or rehearing has expired, to which no appeal or other proceedings for review or rehearing shall then be pending, and has not been vacated.

1.24 *First American* shall mean First American Properties, LLC, the sole member of the Debtor.

1.25 *Insider* shall have the meaning as it is defined in § 101(31) of the Code.

1.26 *Lien* has the meaning assigned to it in § 101(37) of the Code.

1.27 *Person* shall mean any individual, corporation, general partnership, limited partnership, association, limited liability company, joint stock company, joint venture, estate, unincorporated organization, government or any political subdivision thereof, governmental unit, or other entity.

1.28 *Petition Date* shall mean February 11, 2020, the date on which the Debtor filed its voluntary petition for relief under chapter 11 of the Code.

1.29 *Plan* shall mean this chapter 11 plan of reorganization and any amendments, modifications, or alterations to it in accordance with the Code.

1.30 *Pro-Rata Basis* shall mean, with respect to any holder of an Allowed Claim, an amount calculated by and reduced to the proportion that the amount of the Claim bears to the aggregate amount of all Claims in the same

Class or pool.

    1.31    *Reorganized Debtor* shall mean a Debtor after the Effective Date.

    1.32    *Section* means a numbered section of the Plan, such as this Section 1.31.

    1.33    *Supervalu* shall mean Supervalu Holdings, Inc.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan classifies the Claims against the Debtor as follows:

    2.1    Class 1 shall consist of the Allowed Claim of Alliant.

    2.2    Class 2 shall consist of the Allowed Unsecured Claims.

    2.3    Class 3 shall consist of the Equity Interests in the Debtor.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS AND EXPENSES

    3.1    *Administrative Expenses.* Legal fees are being paid by the Debtor's sole member, First American, pursuant to a guaranty that does not permit First American to have recourse for payment against the Debtor unless there are sufficient funds to pay the Debtor's attorneys. The broker seeking a tenant is being paid from the rental proceeds. Quarterly fees due the United States Trustee will be paid as due as due by First American. All expenses related to the Columbus Property are being paid by Alliant under the stipulation between it and the Debtor permitting the receiver to remain in place with Alliant adding the expenses to Alliant's Claim

## ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

    4.1    *Class 1: Allowed Secured Claim of Alliant.* The Debtor shall use its best efforts to secure a tenant to sign a lease for the Columbus Property prior to January 31, 2021. Depending on the Debtor's success in leasing the Columbus Property, the Debtor shall satisfy Alliant's Allowed Secured Claim under one of the following alternatives:

    (a)    *Tenant Secured Prior to January 31, 2021.* If the Debtor succeeds in securing a tenant and signs a lease agreement for the Columbus Property prior to January 31, 2021, then within 14 days of signing the lease agreement, the Debtor shall transfer the Columbus Property to Alliant by quitclaim deed or equivalent means. At that time, the Debtor shall request a hearing at which it and Alliant may present evidence to the Court as to the value of the Columbus Property as leased and transferred to Alliant. Alliant's Allowed Secured Claim shall be satisfied in the amount determined by the Court to be the value of the Columbus Property in consideration for the transfer. In addition, any value that exceeds Alliant's Secured Claim, at Alliant's option, shall be paid by Alliant to the Debtor or be secured by a Lien against the Columbus Property with the new tenant to pay the amount as additional rent over three years with interest at 3.75% per annum from the tenant taking possession. The payments shall be distributed to Class 2 Unsecured Claims until the Class 2 Claims are paid in full with interest at the rate of 3.75%, or the Court-Approved Discount Rate. Afterwards the payments shall be paid to the Debtor.

    (b)    *No Tenant Secured Prior to January 31, 2021.* If the Debtor does not succeed in securing a tenant and does not sign a lease agreement for the Columbus Property prior to January 31, 2021, then on February 1, 2021 or as soon as reasonably possible thereafter, the Debtor shall transfer the Columbus Property to Alliant by quitclaim deed or equivalent means. The value of the Columbus Property shall be deemed to be $4,700,000, and Alliant's Allowed Claim shall be satisfied in that amount in consideration for the transfer.

(c) *Alliant's Unsecured Deficiency Claim.* After applying the Columbus Property to Alliant's Allowed Claim, Alliant shall be paid on a Pro Rata Basis with the Allowed Unsecured Claims in Class 3 from First American's monthly payment of $3,000 as provided in Section 6.1 up to the Allowed Unsecured Claim of Alliant with interest at the rate of 3.75% per annum or the Court-Approved Discount Rate.

(d) *Possession of Columbus Property After Confirmation.* Until January 31, 2021, the Columbus Property shall remain in the possession of the court-appointed receiver, Thomas L. Richter on the terms stated in a stipulation between Alliant and the Debtor filed in the case as docket no. 48. Additionally, all amounts advanced by Alliant during the Case shall be added to Alliant's Claim as provided under the stipulation.

(e) *Impairment.* Alliant's Allowed Claim is impaired.

4.2   *Class 2: Allowed Unsecured Claims.* Commencing on the 15th day of the first month after the Court determines the value of the Columbus Property transferred to Alliant as provided in Section 4.1(a) or (b), Allowed Unsecured Claims in Class 2 shall share on a Pro Rata Basis with Alliant's Allowed Unsecured Claim, if any, from the $3,000 per month paid by First American under Section 6.1 until the Allowed Unsecured Claims in Class 2 are paid in full with interest at the rate of 3.75% per annum or the Court-Approved Discount Rate from the Effective Date. Additionally, Class 2 Claims shall be paid the additional rent equal to the value that exceeds the value of the Columbus Property as provided in Section 4.1(a) until 100% of the Allowed Claims are paid with interest from the Effective Date at the rate of 3.75% per annum or the Court-Approved Discount Rate. Allowed Claims in Class 2 shall not receive more than 100% of their Allowed Claims with interest from the Effective Date of 3.75% or the Court-Approved Discount Rate. Allowed Unsecured Claims are impaired.

4.3   *Class 4: Equity Interests.* The equity interests in the Debtor are unimpaired and unaffected under the Plan, unless Class 2 does not accept the Plan. In that case, the equity interests are cancelled and shall be auctioned to the highest bidder for Cash only as soon as practicable after the Court determines the value of the Columbus Property under Section 4.1. The proceeds of the auction shall be paid to Class 2 as an additional dividend.

**ARTICLE V**
**PROVISION FOR TREATMENT OF DISPUTED CLAIMS**

5.1   *Objection to Claims; Prosecution of Disputed Claims.* The Debtor, the Reorganized Debtor, and any other party in interest shall object to the allowance of any Claims filed with the Court with respect to which any party in interest disputes liability in whole or in part. All objections shall be litigated to a Final Order; provided, however, that any party in interest may compromise and settle objections to Claims without notice and without the approval of the Court. Unless otherwise allowed by the Court, all parties in interest shall serve and file all objections to Claims within 45 days after the Effective Date.

5.2   *Payments and Distributions on Disputed Claims.* From and after the Effective Date, and except as otherwise provided in the Plan, the Reorganized Debtor shall hold and reserve in a segregated account, for the benefit of each holder of a Disputed Claim, Cash in an amount equal to the distribution that would have been made to the holder of any Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the amount of the Disputed Claim or (ii) the amount in which the Disputed Claim shall be estimated by the Court pursuant to § 502 of the Code for purposes of allowance. Any Cash reserved and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing (a) any additional amounts to be paid in Cash in the event the Disputed Claim ultimately becomes an Allowed Claim or (b) any interest payable in accordance with the Plan by the Debtor with respect to such Disputed Claim at the time or times such cash is reserved. The segregated account for Cash reserved for the benefit of holders of Disputed Claims shall be interest-bearing. No payment or distribution shall be made with respect to all or any portion of any Disputed Claim until resolution of all disputes to the Claim by a Final Order.

At the time a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder of the Allowed Claim shall receive the payment(s) and distribution(s) to which it is then entitled under the Plan, together with any interest that has accrued on the amount of cash so reserved, but only to the extent that the interest is attributable to the

5

amount of the Allowed Claim. Such payment(s) shall be made as soon as practicable after the date the order allowing the Claim becomes a Final Order but in no event later than 30 days after the date of the Final Order. Any cash reserved for but not necessary to pay an Allowed Claim shall be retained by the Reorganized Debtor. Disputed Claims which are disallowed shall receive nothing to the extent they are disallowed.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

6.1     ***Cash for Payments on the Effective Date.*** First American shall pay $3,000 per month, commencing on the 15th day of the first month after the Court determines the value of the Columbus Property transferred to Alliant as provided in Section 4.1(a) or (b). The payments shall be used first to pay fees due the U.S. Trustee under 28 U.S.C. § 1930 and then distributed under the Plan on a Pro Rata Basis to Allowed Unsecured Claims in Classes 1 (Alliant's unsecured deficiency claim) and 2 (general unsecured claims).

6.2     ***Management of the Reorganized Debtor.*** Existing management shall manage the affairs of the Reorganized Debtor after the Effective Date unless the equity interests are sold by an auction, in which case the new equity interests shall determine management as provided in the Debtor's bylaws. The court-appointed receiver shall continue to manage the Columbus Property until it is transferred as provide in Section 4.1(a) or (b) to Alliant..

6.3     ***Withholding Taxes.*** The Reorganized Debtor shall withhold from installments, payments and distributions under the Plan any amount which must be withheld for taxes to the extent required by applicable law.

6.4     ***Professional Fees and Expenses.*** Each Person retained or requesting compensation in this case pursuant to §§ 327, 328, 330, 503(b) or 1103 of the Code shall be entitled to file an application for allowance of final compensation and reimbursement of expenses in the case by the date set by the Court.

6.5     ***Mailing and Unclaimed Distributions.*** All distributions made by mail will be made to (a) the latest mailing address filed of record with the Court for the party entitled to it, (b) if no such mailing address has so been filed, the mailing address reflected in the schedule of assets and liabilities filed by the Debtor or (c) any other address known to Debtor or the Reorganized Debtor. Any unclaimed distributions which would otherwise have been disbursed to a Creditor with respect to an Allowed Claim shall be retained as property of the Reorganized Debtor if the Creditor cannot be located.

6.6     ***Responsible Person.*** Except as otherwise may be provided herein, Michael Eisenga, on behalf of the Reorganized Debtor, shall be responsible for the execution and implementation of the Plan.

6.7     ***Debtor's Property After Confirmation Date.*** Except as provided in the Plan, after the Confirmation Date, the Reorganized Debtor shall retain possession of its property, free and clear of all liens and encumbrances, except encumbrances of governmental authorities and utilities for easements and services.

6.8     ***Settlement of Actions or Objections.*** The Reorganized Debtor may settle or compromise any action or objection without notice or Court approval.

6.9     ***Preference, Fraudulent Conveyances, Other Avoidance Actions and Other Causes of Action.*** Except as otherwise provided in the Plan, all Claims of the Debtor against any Person, and all rights to recover preferences, fraudulent transfers or other actions that arose after the Petition Date under the Code or otherwise vest on the Effective Date in the Reorganize Debtor. The actions vested in the Reorganized Debtor include any derivative action that a Creditor or Claimant may have. A list of the known actions that the Reorganized Debtor may pursue are stated on Addendum 6.10.

6.10     ***Confirmation of the Plan Without Approval of Classes Entitled to Priority Over Class 3.*** If any Class entitled to vote rejects the Plan, the Debtor shall request that the Court approve the Plan pursuant to § 1129(b)(1) of the Code.

6.11     ***Payment of U.S. Trustee Fees.*** The Reorganized Debtor shall pay all fees due after the Confirmation

Date pursuant to 28 U.S.C. § 1930 until the case is closed.

6.12     *Professional Fees*. The Reorganized Debtor shall not pay any professional fees or costs incurred before the Confirmation Date except as approved by the Court or otherwise allowed by law. The payment of any professional fees or costs after the Confirmation Date to implement the Plan shall only be made if such fees and costs are reasonable.

## ARTICLE VII
### (Intentionally Left Blank)

## ARTICLE VIII
### AMENDMENTS AND WAIVER

Except as otherwise provided in the Plan and § 1127 of the Code, any non-material term of the Plan may be amended or modified at any time, and the enforcement and observance of any term of the Plan may be waived at any time provided that all Creditors affected by the amendment of waiver have received notice of the proposed non-material amendment or waiver and have not objected in writing within a reasonable period of time and, in any event, any period of time which may be set by the Court.

## ARTICLE IX
### EFFECT OF CONFIRMATION

9.1     *Discharge of Debtor*. Except as otherwise provided in the Plan or in the Confirmation Order, the Debtor will obtain a discharge as provided in § 1141 of the Code upon the Effective Date. The discharge of the Debtor shall be effective as to each Claim regardless of whether a proof of claim was filed for such Claim, whether the Claim is an Allowed Claim, or whether the holder of the Claim has accepted the Plan. Such discharge shall not affect any liability of any non-Debtor with respect to any Claim.

9.2     *Injunction.* Except for enforcing the rights granted to a Creditor under the Plan, all Persons who have held, hold, or may hold Claims as of the Effective Date are permanently enjoined from and after the Effective Date from:

(a)     Commencing and continuing in any manner any action or other proceeding of any kind with respect to any Claim against the Debtor, the Reorganized Debtor, or any of its agents, employees, representatives, financial advisors, attorneys, accountants or affiliates of any such parties (collectively, the "Related Entities"), but solely in the Related Entities' representative capacities as agents or employees of the Reorganized Debtor.

(b)     Enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Reorganized Debtor or any Related Entities, or their property, but solely in the Related Entities' representative capacities as agents or employees of the Reorganized Debtor.

(c)     Creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor or any Related Entities, or their property, but solely in the Related Entities' representative capacities as agents or employees of the Reorganized Debtor.

(d)     Asserting any right of set-off, right of subrogation, or recoupment of any kind against any obligation due the Debtor, the Reorganized Debtor or any Related Entities, or their property, but solely in the Related Entities' representative capacities as agents or employees of the Reorganized Debtor.

9.3     *Consummation*. Upon substantial consummation of the Plan, the Reorganized Debtor may move for a final decree closing the Case and requesting such orders as may be just and equitable.

## ARTICLE X
## RETENTION OF JURISDICTION

To the extent not otherwise prohibited by applicable law, the Court may retain jurisdiction over this Case until the Plan has been fully consummated for all appropriate purposes including, but not limited to, the following:

10.1    To hear and determine all applications for compensation of professionals under § 330 of the Code.

10.2    To classify or reclassify the Claim, and to resolve any and all objections filed against any Claim. Any failure of the Debtor to object to or to examine any Claim for purposes of voting shall not be deemed a waiver of the Debtor's or Reorganized Debtor's right to object to or to re-examine any Claim in whole or in part.

10.3    To determine all questions and disputes arising under the Plan including those regarding title to or interests in the Reorganized Debtor's assets as well as the resolution of all Claims, causes of action, controversies, disputes or conflicts, including any preference, fraudulent conveyance or avoidance action pending as of the Confirmation Date, and for which jurisdiction is specifically retained in the Plan.

10.4    To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order necessary to carry out the purposes and intent of the Plan.

10.5    To modify the Plan after the Confirmation Date.

10.6    To enforce and interpret the terms and conditions of the Plan, and to enforce all orders entered by the Court.

10.7    To enter any order, including orders for injunctive relief, necessary to enforce the title, rights and powers of the Debtor or Reorganized Debtor, as well as the imposition of such restrictions, limitations, terms and conditions as the Court may deem necessary.

10.8    To supervise or approve any aspect of any Claim that might be pursued on behalf of the Debtor, Reorganized Debtor or any Creditor.

10.9    To resolve all adversary actions brought in the Case.

10.10   To enter any order concluding and terminating the Case.

## ARTICLE XI
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

The Effective Date shall occur when each of the following conditions has been met, or Sections 11.2 and 11.4 have been waived by the Debtor filing a notice of the waiver with the Court:

11.1    The Confirmation Order shall have been entered by the Court.

11.2    There has not been an appeal of the Confirmation Order filed.

11.3    There is no stay of the Confirmation Order entered by the Court.

11.4    Ten business days have passed after the Confirmation Order becomes a Final Order.

## ARTICLE XII
## MISCELLANEOUS

12.1    "On the Effective Date" as to any action required to be done under the Plan means on the Effective

Date itself or as soon as practicable that can be accomplished by a reasonably diligent Person. Time is not of the essence.

    12.2    The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the text of the Plan.

    12.3    The rules of construction used in § 102 of Code shall apply to the construction of the Plan.

    12.4    All fees under 28 U.S.C. § 1930, due to the U.S. Trustee, that have not been paid shall be paid within 10 days of the Effective Date.

    12.5    The liens of every Creditor that have been discharged or avoided shall be released of record prior to any installment, payment, distribution or delivery of any property under the Plan to the Creditor.

    12.6    The liens of every Creditor with a Claim that is disallowed or whose lien is avoided shall be void and shall be rendered void by the recording in the appropriate place of record of a certified copy of any order disallowing the Claim or avoiding the lien.

    12.7    Any orders entered or agreements approved by the Court for the use of cash collateral, for adequate protection, or for payments in lieu of the lifting of the automatic stay shall terminate as of the Effective Date. As of the Effective Date, the relationship between the Debtor and all Creditors shall be governed by the Plan.

    12.8    Unless otherwise provided for in the Plan, Creditor of an Allowed Unsecured Claim shall be entitled to the accrual of any interest after the Petition Date on account of the Claim.

    12.9    The fees and costs of attorneys or other professional Persons to administer consummation of the Plan shall be reasonable.

## ARTICLE XII
## CONCLUSION

The Plan reflects the Debtor's best efforts to reorganize its business in a manner that preserves its continued viability, advances the interests of Creditors, and complies in all aspects with the requirements of the Code.

Dated:  July 2, 2020, as modified on
          July 3, 2020.

                                          */s/ Jerome R. Kerkman*
                                          Jerome R. Kerkman
                                          Evan P. Schmit
                                          Gregory M. Schrieber
                                          Kerkman & Dunn

                                          Attorneys for CCC Lot 2, LLC

P.O. Address:

839 N. Jefferson St., Suite 400
Milwaukee, Wisconsin 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: jkerkman@kerkmandunn.com

**Addendum 1**
**Legal Description for Columbus Property**

[To be supplied]